UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION



UNITED STATES OF AMERICA

vs.  CASE NO.: 93-255-Cr-T-15(B)

JORGE IVAN ESPINAL
_____

### PLEA AGREEMENT

A. **Particularized Terms**

Pursuant to Fed. R. Crim. P. 11(e), the United States of America, by Larry H. Colleton, United States Attorney for the Middle District of Florida, and the defendant, Jorge Ivan Espinal, and the attorney for the defendant, Arthur L. Wallace, III, Esquire, mutually agree as follows:

1. **Count(s) Pleading To**

The defendant shall enter a plea of guilty to Count One of the Indictment. Count One charges the defendant with conspiracy to possess with intent to distribute cocaine, in violation of 21, U.S.C. § 846.

2. **Maximum Penalties**

Count One carries a maximum sentence of life imprisonment, a minimum mandatory term of ten (10) years, a fine of up to $4,000,000, a term of supervised release of at least five (5) years and a special assessment of $50, said special assessment to be due on the date of sentencing. When applicable,

Defendant's Initials  J.E



the Court may also order the defendant to make restitution to any victim of the offense(s), as set forth below.

3. Elements of the Offense(s)

The defendant acknowledges understanding the nature and elements of the offense(s) with which defendant has been charged and to which defendant is pleading guilty. The elements of Count One are:

> First: That two or more persons in some way or manner, came to a mutual understanding to try to accomplish a common and unlawful plan, as charged in the Indictment; and
>
> Second: That the defendant knowingly and willfully became a member of such conspiracy.

4. Acceptance of Responsibility

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a three (3) level downward adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1. The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court the defendant will not be allowed to withdraw from the plea.

5. Role in Offense

The United States does not oppose the defendant's request to the Court that the defendant receive a two (2) level downward adjustment, pursuant to U.S.S.G. § 3B1.2, regarding the defendant's role in the offense. The defendant understands that

Defendant's Initials  J.E

this recommendation or request is not binding on the Court, and if not accepted by the Court the defendant will not be allowed to withdraw from the plea.

6. Substantial Assistance

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" pursuant to 18 U.S.C. § 3553(e), U.S.S.G. § 5K1.1, and the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending a downward departure from the applicable guideline range. If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" pursuant to Fed. R. Crim. P. 35(b), and the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of

Defendant's Initials __J.E.__

sentence within one year of the imposition of sentence. In either case, the defendant understands that the determination as to whether "substantial assistance" has been provided rests solely with the government, and the defendant agrees that defendant cannot and will not challenge that decision, whether by appeal, collateral attack or otherwise.

7. Section 1B1.8

Pursuant to U.S.S.G. § 1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in U.S.S.G. § 1B1.8(b).

8. Cooperation

The defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify fully and truthfully before any and all federal grand juries and at any trials or other proceedings in connection with any of the cases, charges or matters noted herein, and any related cases. The defendant further agrees to be reasonably available for all interviews which the United States may require. The defendant further agrees to make full and complete disclosure of all relevant information, including production of any and all books, papers, documents and other objects in the defendant's possession or control.

Defendant's Initials __J.E__

4

9.  Cooperation - Responsibilities of Parties

    a.  The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime. However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

    b.  It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

    1) The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

    2) The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement. With regard to such charges, if any, which have been dismissed, the

Defendant's Initials __J.E__

defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recision of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

3) The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

4) The government may use against the defendant his own admissions and statements and the information and books, papers, documents and objects that he himself has furnished in the course of his cooperation with the government.

Defendant's Initials   J.E

6

5) The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case, but in that event defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

10. Forfeiture

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to Title 21, United States Code, Section 853, which are in the possession or control of the defendant or defendant's nominees. The assets to be forfeited include, but are not limited to, cash, stocks, bonds, certificates of deposit, personal property and real estate.

The defendant further agrees to fully assist the government in the recovery and return to the United States of any assets or portions thereof as described above wherever located. The defendant further agrees to make a full and complete disclosure of all assets over which defendant exercises control and those which are held or controlled by a nominee. The defendant further agrees to be polygraphed on the issue of assets if it is deemed necessary by the United States. The defendant agrees to forfeit all interests in the properties as described

Defendant's Initials __J.E.__

7

above and to take whatever steps are necessary to pass clear title to the United States. These steps include but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers. The defendant agrees to consent to any civil forfeiture brought against these properties pursuant to Title 21, United States Code, Section 881. All steps necessary to locate property and to pass title to the United States shall be completed before the defendant's sentencing.

The defendant agrees that the United States is not limited to forfeiture of the property described above. If the United States determines that property of the defendant identified for forfeiture cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; then the United States shall, at its option, be entitled to forfeiture of any other property (substitute assets) of the defendant up to the value of any property described above. This Court shall retain jurisdiction to settle any disputes arising from application of this clause. The defendant agrees that forfeiture of substitute assets as authorized herein and pursuant to 21 U.S.C. § 853(p) shall not be deemed an alteration of the defendant's sentence. Forfeiture of the defendant's assets shall not be treated as satisfaction of

Defendant's Initials __J.E.__

any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.

B. **Standard Terms and Conditions**

1. <u>Restitution, Special Assessment and Fine</u>

The defendant understands and agrees that the Court may also, in addition to or in lieu of any other penalty, order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663 (offenses committed on or after 11/1/87) or section 3579, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. On each count to which a plea of guilty is entered, the Court shall impose a special assessment, to be payable to the Clerk's Office, United States District Court, and due on date of sentencing. The defendant understands that this agreement imposes no limitation as to fine.

2. <u>Supervised Release</u>

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3. <u>Sentencing Information</u>

The United States reserves its right and obligation to report to the Court and the United States Probation Office all

Defendant's Initials __J.E.__

9

information concerning the background, character and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

The defendant agrees, and by the execution of this plea agreement, authorizes the United States Attorney's Office to provide to and obtain from the United States Probation Office or any victim named in an order of restitution, or any other source, any of the defendant's federal, state and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution or forfeiture ordered by the Court.

4. Sentencing Guidelines and Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence

Defendant's Initials __J.E.__

10

and the sentencing guidelines, if any, applicable to defendant's case will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant understands that the Court is required to consider any applicable sentencing guidelines but may depart from these guidelines under some circumstances. Defendant acknowledges that defendant and defendant's attorney have discussed the sentencing guidelines and defendant understands how the guidelines are applicable to defendant's case. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding the potential application of the sentencing guidelines to defendant's case and any recommendations by the government are not binding on the United States Probation Office or the Court and that, should any recommendations be rejected, and regardless of the guidelines calculated by the Probation Office or the Court, defendant will not be permitted to withdraw defendant's plea pursuant to this Plea Agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

    5.    <u>Appeal of Sentence; Waiver</u>

The defendant understands and acknowledges that defendant's sentence will be determined and imposed in conformance with the Comprehensive Crime Control Act of 1984, and

Defendant's Initials   J.E.

11

the federal sentencing guidelines. Defendant is also aware that a sentence imposed under the sentencing guidelines does not provide for parole. Knowing these facts, the defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum set forth for the offense and pursuant to the sentencing guidelines, and expressly waives the right to appeal defendant's sentence, directly or collaterally, on any ground except for an upward departure by the sentencing judge or a sentence above the statutory maximum or a sentence in violation of the law apart from the sentencing guidelines; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

    6.    <u>Middle District of Florida Agreement</u>

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state or local prosecuting authorities, although this Office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

    7.    <u>Filing of Agreement</u>

This agreement shall be presented to the Court, in open court or <u>in camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

Defendant's Initials   J.E.

8. <u>Voluntariness</u>

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty, and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but by pleading guilty defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any),

Defendant's Initials __J.E.__

13

defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

9.   Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those facts beyond a reasonable doubt:

FACTS

In March 1993, Francisco Villa, "Joel" and others known and unknown did conspire with each other to possess with intent to distribute cocaine, and solicited Undercover Agents of the United States Customs Service to transport multi-kilograms of cocaine from Colombia to Tampa, Florida. The Undercover Agents of the United States Customs Service were advised that they would be paid three thousand five hundred dollars ($3,500) for each kilogram of cocaine transported.

On July 3, 1993, representatives of Francisco Villa and "Joel" provided confidential sources of the United States Customs Service 99.4 kilograms of cocaine. The transfer of the cocaine took place in international waters off the coast of Colombia.

Defendant's Initials ___J.E.___

14

On July 10, 1993, the confidential sources turned over the 99.4 kilograms of cocaine to Special Agents of the United States Customs Service in Tampa, Florida. The substance was field tested with a Scott Reagent test kit and it tested positive for cocaine.

On July 12, 1993, "Joel" advised Undercover Agents of the United States Customs Service that they would be contacted by a representative to negotiate the transfer of money for cocaine. Subsequently, Jose Jalca met with the Undercover Agents and negotiated the transfer of the cocaine and money.

On July 14, 1993, Undercover Agents of the United States Customs Service met with Jose Jalca and showed him the 99.4 kilograms of cocaine. Jose Jalca tested the cocaine in front of the Undercover Agents.

On August 5, 1993, Francisco Villa sent a representative, "Billy" (later identified as Mauricio Sogamoso-Rubano), to Tampa, Florida to arrange for the exchange of money for the cocaine.

On August 16, 1993, Mauricio Sogamoso-Rubano, a/k/a "Billy," Fredy Arias, a/k/a "Jairo," and Carlos Humberto Franco-Ramirez met with Undercover Agents of the United States Customs Service in Miami, Florida and negotiated with the undercover agents for the exchange of $200,000 for 99.4 kilograms of cocaine.

On August 18, 1993, Mauricio Sogamoso-Rubano, a/k/a "Billy," contacted undercover agents of the U. S. Customs Service and advised them that he was at Tampa International Airport. Mauricio Sogamoso-Rubano, a/k/a "Billy," advised the undercover

Defendant's Initials  J.E.

15

agents that $100,000 was driven from New York to Tampa, Florida, to be paid to the undercover agents. Mauricio Sogamoso-Rubano, a/k/a "Billy," contacted an individual utilizing the undercover agent's cellular telephone. The conversation took place on a speakerphone audible to the undercover agents and Mauricio Sogamoso-Rubano, a/k/a "Billy." The individual provided directions to the undercover agents as to how to get to 4710 Town 'N Country Blvd., Tampa, Florida.

At approximately 19:53 hours the undercover agents and Mauricio Sogamoso-Rubano, a/k/a "Billy," arrived at 4710 Town 'N Country Blvd., Tampa, Florida. Mauricio Sogamoso-Rubano, a/k/a "Billy," went into the residence and returned shortly thereafter with a plastic bag containing approximately $95,000. Mauricio Sogamoso-Rubano, a/k/a "Billy," provided undercover agents of the United States Customs Service with the approximately $95,000 and Mauricio Sogamoso-Rubano, a/k/a "Billy," directed the undercover agents to transport the 99.4 kilograms of cocaine to Miami, Florida where Carlos Humberto Franco-Ramirez and Fredy Arias, a/k/a "Jairo," would take possession of the cocaine.

On August 19, 1993, at 15:45 hours undercover agents arrived at the Don Carter Bowling Alley, 88th Street and 137th Avenue, Miami, Florida. The undercover van, containing approximately 82 kilos of cocaine concealed inside, was parked in the parking lot. Undercover agents met with Fredy Arias, a/k/a "Jairo," Carlos Humberto Franco-Ramirez, a/k/a "Carlos," and Jorge Ivan Espinal, a/k/a "Jorge," inside the bowling alley. Fredy Arias, a/k/a

Defendant's Initials   J.E.

16

"Jairo," accompanied undercover agents to the undercover van where he was shown the cocaine concealed in the van. Fredy Arias, a/k/a "Jairo," was then provided keys to the van. The undercover agents were advised that the undercover van would be returned in two hours. Fredy Arias, a/k/a "Jairo," went back into the bowling alley and met with Carlos Humberto Franco-Ramirez, a/k/a "Carlos," and Jorge Ivan Espinal, "Jorge." At 16:15 hours Jorge Ivan Espinal, a/k/a "Jorge," exited the front of the bowling alley and looked around the parking lot for approximately 5 minutes. The undercover van could be observed from his position and he looked in that direction several times. Jorge Ivan Espinal then went back into the bowling alley. At 16:20 hours Fredy Arias, a/k/a "Jairo," and Jorge Ivan Espinal existed from the front of the bowling alley and walked over to the undercover van. After checking the exterior of the vehicle Jorge Ivan Espinal got into the driver's side and Fredy Arias, a/k/a "Jairo," got into the passenger side. When they attempted to leave the area Fredy Arias, a/k/a "Jairo," and Jorge Ivan Espinal were arrested. Carlos Humberto Franco-Ramirez was subsequently arrested in the bowling alley. Jorge Ivan Espinal was advised <u>Miranda</u>. His post-<u>Miranda</u> statement was that he was to be paid to drive the van to another location. He stated that Fredy Arias, a/k/a "Jairo," and Carlos Humberto Franco-Ramirez did not tell him what was in the vehicle but he knew it had to be drugs or that the van was a stolen vehicle.

Defendant's Initials  J.E.

17

On August 19, 1993, at approximately 1700 hours, Mauricio Sogamoso-Rubano, a/k/a "Billy," was arrested in Tampa, Florida, by Special Agents of the U. S. Customs Service.

On August 19, 1993, at approximately 2030 hours, Jose Jalca was arrested in Tampa, Florida, by Special Agents of the U. S. Customs Service.

10. Entire Agreement

This Plea Agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

11. Certification

The defendant and defendant's counsel certify that this Plea Agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

Dated this 18 day of January, 1994.

LARRY H. COLLETON
United States Attorney

X Jorge Ivan Espinal.
JORGE IVAN ESPINAL
Defendant

By: Joseph K. Ruddy
JOSEPH K. RUDDY
Assistant United States Attorney

ARTHUR L. WALLACE, ESQUIRE
Attorney for Defendant

By: Joseph K. Ruddy Jr
WALTER E. FURR
Assistant United States Attorney
Chief, Drug Trafficking Section

18